Ann Douglass and Thomas L. Douglass vs. Robert E. Baker.

---

ANN DOUGLASS AND THOMAS L. DOUGLASS vs. ROBERT E. BAKER.

1. In an action against a sheriff for failing to levy an execution, it is not necessary for the plaintiff to prove a demand of the money due on the execution, nor that the party has been damaged. Under our statute the officer is liable for the full amount of the execution.

Ann Douglass and Thomas L. Douglass vs. Robert E. Baker.

2. An officer is bound to execute a writ without delay. If, by delay, he become unable to execute a writ which he might have executed, he is liable for damages.

3. He is not justified for failing to levy an execution in his hands, by the passage of the act abolishing imprisonment for debt, if such writ could have been executed before the passage of that act.

## ERROR to Callaway Circuit Court.

TODD, for Plaintiff in error.

#### POINTS AND AUTHORITIES.

The plaintiff insists to reverse the judgment:

1. That no demand of defendant for money is necessary, as this action is in tort.

2. That the officer is bound to use due diligence to serve a capias.

3. That the damages for neglect of duty in serving execution is fixed by law, and does not depend upon proof of actual injury sustained.

4. Sheriff is bound to use diligence to levy execution. 1, J. J. Marshall, 551.

J. K. SHELEY, for defendant.

TOMPLINS, J., delivered the opinion of the court.

Ann Douglass and Thomas L. Douglass brought their action of trespass on the case against Robert E. Baker, in the circuit court of Callaway county, where judgment being given against them, they appealed to this court.

The declaration states, that one Daniel Nolly was indebted to the plaintiffs on a judgment obtained in the circuit court of Callaway county, on 6th December, 1842, and that on that day, they sued out of the office of the clerk of the circuit court of said county, a writ of *capias ad satisfaciendum,* against the body of said Nolly; and also a writ of *fieri facias,* against the goods, &c., made returnable on the 5th day of April then next following; which was on the same day delivered to the sheriff, the said Baker, to be executed and returned; and charges that Nolly was during all the time intervening betwixt the issuing and return day of said writ, within the county of Callaway, and that Baker, the sheriff, refused to execute it : by which means he lost his debt.

The judgment and execution were given in evidence. It was also in evidence, that on the first day of January, 1843, one of the plaintiffs told the sheriff to execute the writ on Nolly, by taking his body, and pointing to Nolly, who was passing along the street; and that the sheriff replied, he had heard the legislature had, or was about to pass a law to abolish imprisonment for debt; but that he neither promised to execute the writ, nor declined doing it. ⋆It was also in evidence, that Nolly, at the date of the execution, was notoriously insolvent, and still continued so; and that during the winter after the issuing of the execution, he had settled some demands against him, by assigning or otherwise transferring notes.

The defendant then gave in evidence a letter of the Secretary of State, to the sheriff of Callaway county, enclosing the act of 17th of January, 1843, by which, imprisonment for debt was abolished. He gave other evidence of the general reputation of the insolvency of Nolly.

The plaintiffs prayed from the court the instruction following:

1. If they believe from the evidence, that the defendant in the execution was within the county of the officer in whose hands the capias was placed, and that he could have been arrested before the passage of the act of the Legislature abolishing imprisonment for debt, then, they will find for the plaintiff.

The third instruction was, that if the jury believe from the evidence, that the execution was not returned according to the command thereof, they will find for the plaintiff.

It was charged in the declaration, that the execution was not returned according to its command, and the return made was, that no goods, &c., of Nolly, were found, and that his body was not taken on account of the passage of the law above mentioned.

These instructions were refused, and the court on the motion of the defendant, gave the following instructions:

1. That the jury must find for the defendant, unless plaintiff has proved a demand of the defendant, for the money in the execution.

2. That the jury must find for the defendant unless they believe the plaintiff had been damaged by the failure of the defendant to arrest Nolly.

The plaintiff excepted to the decision of the court in giving these instructions, as they had before done to the decision of the court in refusing those asked by themselves. The plaintiff then took a non-suit, and afterwards moved to set it aside, for reasons filed, to wit: the giving and refusing the instructions as above mentioned.

The cases cited by the defendant, to prove that the plaintiffs ought to

Ann Douglass and Thomas L. Douglass vs. Robert E. Baker.

have made a demand of the sheriff, all relate to cases of motions against officers for money received by them, and paid over; or of an agent or factor for his principal.

This action is against a sheriff charged with a breach and neglect of duty. In the case of Dygert ads. Crane, 1st Wend. 534, it is decided that assupmsit will lie against a sheriff for money collected by him on an execution, without a previous demand. Much more then, will an action on the case lie against him for a breach of duty. Why make a demand for money, which he has failed to collect? The circuit court then committed error in giving the first instruction asked by the defendant.

The 52d section of the act to regulate executions, p. 260, of the Digest of 1835, declares that, "If any officer to whom any execution shall have been delivered, shall neglect or refuse to execute or levy the same according to law, or shall take any property, or any such property shall be delivered to him by any person against whom an execution is issued, and if such officer shall neglect or refuse to make sale of such property so taken or delivered, according to law, or if such officer shall not return any such writ according to law, or shall make a false return thereof, or after having taken the defendant's body in execution, shall permit him to escape, and shall not have his body according to the command of the writ, then, and in any of the cases aforesaid, such officer shall be liable to pay the whole amount of money, in such writ specified, or thereon endorsed, and directed to be levied."

This section of the act does not require the plaintiff to show that he has sustained damages by the failure of the sheriff to levy or execute the writ according to law, nor does it seem to leave it to a jury to decide the point. The highest evidence of the insolvency of the defendant in the execution would have been the return of the sheriff, such a return as the law at the issuing thereof required him to make. As authorities for this second instruction, the defendant, appellee here, cited, Patterson vs. Westervelt, 17th Wend. 543. The People vs. Adgate, 2 Cowan 504, and 4th Mc Cord's Rep. 142. These reporters do not refer to any statutory provision, in their respective States, and seem to give us what their courts thought to be just in the several cases, and if we had no statute on the subject, the authority of these cases would perhaps be decisive of the case. But when our statute declares that the sheriff on failure or neglect to do his duty shall pay the whole, it would seem that the courts cannot leave it to a jury to decide what damage the plaintiffs in the execution have sustained. The second instruction given for the defendant seems to me so be erroneous.

It certainly was the right of the plaintiffs in the execution to have the writ levied and executed as soon as it conveniently could be done after the delivery to the sheriff, and he had no right to wait to see whether the Legislature would pass any act to abolish imprisonment for debt, Every day that he delayed to take the body in execution after he discovered that there were no goods on which to levy, was another risk of the loss of the debt due. Had the body been taken the debtor might have satisfied the execution. It is not given to one man to know what another is able to do. It was testified that the defendant did after the issuing of the execution pay several demands in some manner. And it is reasonable to belive that if he had been taken in execution, he might have exerted himself to do something to satisfy the execution. Waving the enquiry whether the act of the 17th January, 1843, did take from the plaintiffs, the right acquired by this execution to take the body, it is certain that they had it by that execution until the passage of the law, and the sheriff does not seem to derive any right from the old act to indulge debtors at the risk of the plaintiffs in the execution. The first instruction asked by the plaintiffs ought then I think to have been given.

As the sheriff had not arrested the defendant in the execution before the passage of the act abolishing imprisonment for debt, we believe he had no right to do it afterwards. Because then the circuit court gave the two instructions prayed by the defendant and refused the first instructions prayed by the plaintiff, its judgment is reversed and the case remanded.

NAPTON, J. I concur in reversing the judgment. It was the duty of the sheriff to have arrested the defendant in the execution, when pointed out to him by the plaintiff, without regard to any expectation which he may have entertained in relation to the future action of the legislature.